**Frank C. HOWARD and Nancy Howard, Plaintiffs-Appellants,**

**v.**

**UNITED STATES of America, Defendant-Appellee.**

**No. 73–1946.**

United States Court of Appeals, Seventh Circuit.

Argued April 16, 1974.

Decided May 20, 1974.

---

Joseph W. Grady, Chicago, Ill., for plaintiffs-appellant.

Scott P. Crampton, Asst. Atty. Gen., David E. Carmack, Atty., Tax Div., Dept. of Justice, Washington, D. C., James R. Thompson, U. S. Atty., Chicago, Ill., for defendant-appellee.

Before FAIRCHILD, PELL and STEVENS, Circuit Judges.

PER CURIAM.

Plaintiffs, Frank C. Howard and Nancy Howard, filed a joint income tax return for the year 1965 in which they claimed a $99,900.00 theft loss.[1] 26 U.S.C. § 165. The Internal Revenue Service investigated this claim, but made no objection before the statute of limitations ran.[2] Plaintiffs then sought

---

1. Plaintiffs' actual loss of $100,000.00 was limited by a $100.00 statutory deduction. 26 U.S.C. § 165(c)(3).

2. Neither the Secretary of the Treasury nor his authorized delegate entered into a closing agreement with plaintiffs pursuant to 26 U.

a refund for the years 1962 and 1963 on the ground that the 1965 loss created a net operating loss carryback. 26 U.S.C. § 172. This time, however, the IRS determined that plaintiffs' 1965 loss was occasioned by a nonbusiness bad debt, 26 U.S.C. § 166, and not by theft; thus, it denied the refund. 26 U.S.C. § 172(d). Plaintiffs commenced an action pursuant to 28 U.S.C. § 1346(a)(1), and, after a bench trial, the district court upheld the Commissioner's determination.

Two questions are presented on appeal. First is whether the IRS is collaterally estopped from denying the net operating loss carryback because it had already "approved," by not disallowing, the 1965 loss. Second is whether the evidence demonstrates that plaintiffs' loss resulted from a theft. We answer both questions in the negative and, accordingly, affirm the judgment below.

### I.

■ Plaintiffs' initial contention is that the Commissioner's action concerning the 1965 claim was equivalent to a judgment; thus, the doctrine of collateral estoppel prevents him from "re-determining" the nature of this loss. *See* Commissioner v. Sunnen, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898. Assuming, but by no means deciding, that the Commissioner's review of the 1965 return was tantamount to an approval of the claimed theft loss, we must nevertheless reject plaintiffs' argument.

Professor Moore has correctly observed:

[I]t is axiomatic to the doctrines of res judicata and collateral estoppel that only judicial decisions are given conclusive force in subsequent legal proceedings. Thus determinations made by the Commissioner of Internal Revenue are not judicial in nature but administrative and are not res judicata to bind him for the same taxable year or for subsequent years.

1B J. Moore, Federal Practice ¶ 0.-422[2], at 3403 (2d ed. 1974); *see* Burnet v. Porter, 283 U.S. 230, 51 S.Ct. 416, 75 L.Ed. 996; Commissioner v. Newport Industries, Inc., 121 F.2d 655, 657 (7th Cir. 1941); Bonwit Teller & Co. v. Commissioner, 53 F.2d 381, 384 (2d Cir. 1931), cert. denied, 284 U.S. 690, 52 S. Ct. 266, 76 L.Ed. 582.[3] Accordingly, courts have consistently allowed the IRS to reconsider a taxpayer's liability in situations analogous to the present one. *E. g.*, Pacific Transport Co. v. Commissioner, 483 F.2d 209, 214–215 (9th Cir. 1973), cert. denied, 415 U.S. 948, 94 S. Ct. 1469, 39 L.Ed.2d 563, 42 U.S.L.W. 3485 (1974); Phoenix Coal Co. v. Commissioner, 231 F.2d 420, 421–422 (2d Cir. 1956); Commissioner v. VanBergh, 209 F.2d 23 (2d Cir. 1954); *see* 26 U. S.C. § 6214(b).

### II.

■ Plaintiffs' second contention is that the 1965 transaction with John Laures was an embezzlement of $100,000.00 and, consequently, a theft loss within the meaning of 26 U.S.C. § 165.[4] After having considered all the

---

S.C. § 7121. Nor did the IRS ever inform plaintiffs that their return had been audited and found to be correct. The IRS simply failed, albeit after considerable investigation, to disallow the loss.

3. Commissioner v. Sunnen, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898, is not to the contrary. There the Court indicated that a judgment of the Board of Tax Appeals could be given res judicata or collateral estoppel effect. The Revenue Act of 1926, however, had endowed the Board with capacity to render decisions which were final and binding. American S.S. Co. v. Wickwire Spencer Steel Co., 8 F.Supp. 562, 566 (S.D.N.Y.1934).

Prior to the 1926 Act decisions of the Board did not have such an effect. 1B J. Moore, Federal Practice ¶ 0.422[2], at 3403 (2d ed. 1974). With the exception of 26 U.S.C. § 7121, see note 2 *supra*, we are not aware of any provision which endows the Commissioner with the same capacity.

4. 26 C.F.R. § 1.165–8(d) (1973) provides:
  For purposes of this section the term "theft" shall be deemed to include, but shall not necessarily be limited to, larceny, embezzlement, and robbery.
  Whether a theft has occurred is a factual question, Alison v. United States, 344 U.S. 167, 170, 73 S.Ct. 191, 97 L.Ed. 186, which

evidence in this case, the district court concluded:

It is impossible under this record to make any finding based upon credible evidence that a theft occurred as defined by the Illinois statutes . . . . The evidence furnished by plaintiffs does not establish that Laures obtained possession of plaintiffs' stock or its proceeds by deception, with the intent to deprive plaintiffs permanently of the use of their property.

In our opinion, the district court's conclusion is most certainly not clearly erroneous and must therefore be upheld. Fed.R.Civ.P. 52(a).

In 1965 John Laures needed additional working capital for Concrete Maintenance Products, Inc. (CMP), a company which he managed. He approached plaintiffs, who were his friends and business associates, and asked if he could sell their 100,000 shares of CMP stock (at $1.00 per share) to raise the necessary capital. In return Laures promised to replace the stock at some future (unspecified) date with his own and, if possible, to induce the company to issue plaintiffs convertible debentures. Plaintiffs agreed.[5] They gave Laures the shares to sell, which he did, and then endorsed the proceeds of this sale to him. Although Laures initially deposited the entire $100,000.00 in his personal checking account, $50,000.00 eventually found its way into CMP's corporate account. CMP later went bankrupt and Laures left Illinois without the debentures having been issued or the stock or money having been returned.

The district court coud reasonably infer from this evidence that Laures borrowed the $100,000.00 with the original intent of paying it back. Under such an interpretation, the failure to repay would establish a breach of contract but not a theft.[6] As the Supreme Court has repeatedly held:

[W]here the evidence would support a conclusion either way but where the trial court has decided it to weigh more heavily for . . . [one party] [s]uch a choice between two permissible views of the weight of evidence is not "clearly erroneous."

United States v. Yellow Cab Co., 338 U.S. 338, 342, 70 S.Ct. 177, 179, 94 L.Ed. 150. *Accord*, United States v. National Association of Real Estate Boards, 339 U.S. 485, 495–496, 70 S.Ct. 711, 94 L.Ed. 1077. Consequently, the judgment of the district court is

Affirmed.

---

must be answered in accordance with the law of the jurisdiction where the loss was sustained. Edwards v. Bromberg, 232 F.2d 107, 111 (5th Cir. 1956). Plaintiffs, of course, had the burden of establishing that a theft occurred. *See* Boehm v. Commissioner, 326 U.S. 287, 294, 66 S.Ct. 120, 90 L.Ed. 78. This burden was not met simply by proving that their claim of theft was initially allowed by the Commissioner.

5. There is some uncertainty as to the precise nature of this agreement. At trial plaintiffs claimed that they were making a loan to CMP and that Laures was authorized only to use the $100,000 for CMP's working capital. This was perhaps consistent with their claims in the Bankruptcy of CMP. On the other hand, Laures testified in his deposition that plaintiffs were not making a loan to the corporation; rather plaintiffs permitted him to use their stock as an accommodation to obtain the $100,000.00. This was perhaps consistent with plaintiffs' attachment action against Laures in which they claimed that a personal loan was made to Laures. The district court concluded that, under either version, a theft had not been proven.

6. The Illinois Criminal Code provides that theft is committed when, *inter alia*, a person "obtains by deception control over property of the owner" and "intends to deprive the owner permanently of the use or benefit of the property." Ill.Rev.Stat. ch. 38, § 16–1 (1973). The Code further provides: "Failure to perform standing alone is not evidence that the offender did not intend to perform." Ill.Rev.Stat. ch. 38, § 15–4(e) (1973).