**ESTATE OF Alice B. SMITH**

v.

**UNITED STATES of America.**

**Civ. No. 81–3272.**

United States District Court,
E.D. Louisiana.

Aug. 15, 1984.

Robert R. Casey, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, La., for plaintiff.

Lawrence Sherlock, Tax Div., Dept. of Justice, Washington, D.C., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

MENTZ, District Judge.

The taxpayer, the Estate of Alice B. Smith, brought suit for refund from the government of $210,194.65. This amount represents a deficiency assessment and penalty paid by the taxpayer in relation to the filing of its estate tax return. The matter was tried before the Court on July 2, 1984. The parties were given an opportunity to file post trial briefs, and the matter was taken under submission on July 12, 1984.

### FINDINGS OF FACT

1.

The decedent, Alice B. Smith, died on May 22, 1974. At the time of her death, the decedent owned various undivided fractional interests in real estate in the Parishes of Beauregard, Calcasieu, Cameron, Grant, Jefferson Davis and Sabine, Louisiana. She also owned various undivided interests in mineral rights in the Parishes of Beauregard, Cameron, Grant, Jefferson Davis Davis and Sabine, Louisiana.

2.

Thomas Barr, III, was appointed executor of the decedent's estate. Barr is an attorney with experience in probate matters, though he had never before prepared a federal estate tax return.

3.

Barr knew that the federal estate tax return was due nine months after the death of the decedent. Soon after Smith's death, Barr began to make preparations for the filing of the return. On August 5, 1974, Barr contacted Moses Abelman, a realtor and real estate appraiser, to have the value of the surface rights of the property appraised. Around this time, Barr also se-

cured the services of Stan Warburton, a geological consultant, to appraise the mineral interests.

### 4.

Abelman valued the fractional interests of the surface rights owned by the decedent at $509,580.00. Included in this appraisal was a discount to account for the fractional nature of the interest owned by the decedent in each particular parcel of land.[1] Abelman further discounted the decedent's interests in these properties by ten percent thereby reducing his estimate of the fair market value to reflect the discount that a cash buyer would have been able to negotiate had he purchased all of the property in one transaction.

### 5.

Warburton appraised the fair market value of the mineral interests held by the decedent at $324,355. Warburton stated that his appraisal reflected a fractional interest discount where appropriate.[2] However, Warburton's appraisal did not take into consideration legislative initiatives pending before Congress.

### 6.

Barr valued the decedent's surface interests at $226,902; he valued the decedent's mineral interests at $129,742. These figures were based upon the figures arrived at by the appraisers, discounted further by a factor of 60 percent. Barr was not experienced in the art of appraising mineral or surface rights. Nevertheless, he applied a 60 percent discount factor indiscriminately to each undivided mineral and surface interest because he mistakenly believed that the appraisers had failed to consider the effect that the ownership of an undivided interest would have on the fair market value.

### 7.

The Commissioner of the Internal Revenue Service ("Commissioner") valued the decedent's surface interests at $509,580. The Commissioner valued the decedent's mineral interests at $324,355. The Court finds that the fair market values of the interests in question at the time of decedent's death were no less than the amounts used by the Commissioner. Indeed, the Court finds that the most credible evidence establishes that on the date of the decedent's death, the real estate and mineral interests had fair market values of $705,974 and $324,355, respectively.

### 8.

Barr did not file the federal estate tax return timely, nor did he make timely payment of the tax due. Initially, the estate return and tax was due on February 22, 1975. Because Barr could not obtain Abelman's appraisal on time, he filed an application for an extension of time to file the estate tax return and pay the tax due. This application was approved through May 22, 1975.

### 9.

On May 2, 1975, Barr filed a second application for extension of time to file the return and pay the tax due. The Commissioner approved this application through August 22, 1975.

### 10.

On July 15, 1975, Barr filed a third application for extension of time to file the return and pay the tax due. The application for extension of time to file was not approved. The application for extension of

---

1. For example, if the decedent owned a 3.975% interest in the surface rights of a particular tract of land valued at $1,000, Abelman would value the decedent's interest at $397.50. To this figure, Abelman would then apply an additional discount to account for the decreased value of a fractional interest. The amount of this discount would depend on various factors such as the type of property, the size of the divided interest owned, and the number of co-owners. Thus, for example, if Abelman determined the proper discount to be 60 percent, the final valuation of the divided interest would be $159.00 (397.50 × 40%). [This example is taken, in substantial measure, from Abelman's testimony.]

2. Warburton stated that a fractional interest discount is appropriate only with respect to properties that are not producing minerals. Producing properties, in contrast, should bring the full value of the fractional interest when sold in an arm's length transaction.

time to pay was approved through November 22, 1975.

### 11.

Barr received the final appraisal from Abelman on June 23, 1976.

### 12.

Despite being fully aware of the deadlines mentioned above, Barr did not file the federal estate tax return and did not pay the tax due until March 24, 1977, more than nine months after receiving Abelman's appraisal. At trial, Barr explained this delinquency as follows:

(A) Barr, relying on his own knowledge and on the advice of his accountant, Mr. Joseph Phillips, erroneously believed that the only detriment that the estate would suffer because of its failure to timely file the return or pay the tax was that interest would begin to accrue prospectively from November 22, 1975, until the tax was paid.

(B) Barr erroneously believed that he could not file an estate tax return until the detailed descriptive list was filed in the state court succession proceeding. This document was filed in state court on March 23, 1977.

(C) Barr erroneously believed that he could not file an incomplete estate tax return or a supplemental amended return.

(D) Barr erroneously believed that Phillips had been informed by an Internal Revenue Service ("IRS") employee that no penalty would be imposed as a result of the delinquent filing and payment. Phillips, however, testified that while his recollection of the conversation with the IRS employee was clouded, he did remember the IRS agent telling him that a penalty would be imposed.

### 13.

Because the Commissioner assigned a substantially higher valuation to the decedent's mineral and surface interests, the taxpayer was charged with an additional estate tax of $140,639.81, which was paid by the plaintiff on July 14, 1980, along with interest of $54,102.99.

### 14.

The Commissioner also determined that the late filing of the return and the late payment of the tax were not due to reasonable cause and imposed penalties of $59,552.31 and $10,002.53 which were paid by the taxpayer.

### 15.

When the estate tax return was first filed by the executor, similar penalties had been imposed by the IRS for lesser amounts. Those penalties were paid by the estate under protest and were refunded to the estate before the tax return was examined by the IRS. The penalties at issue herein were reimposed after the examination of the return.

## CONCLUSIONS OF LAW

### (1)

The Court has jurisdiction over the matter. 28 U.S.C. § 1346(a)(1).

### (2)

The taxpayer has the burden of proving not only that the Commissioner's assessment was erroneous but also the correct amount of his tax liability. *Helvering v. Taylor*, 293 U.S. 507, 55 S.Ct. 287, 79 L.Ed. 623 (1935); *Mallette Bros. Const. Co. v. United States*, 695 F.2d 145 (5th Cir. 1983). The taxpayer has failed to demonstrate both that his valuation of the surface and mineral interests was correct and that the Commissioner's valuation of those interests was erroneous. The evidence clearly demonstrated that both appraisers considered the effects of co-ownership in determining the fair market value of the decedent's property.[3] Although it is true that Warburton did not adjust his calcula-

---

**3.** Fair market value is defined as "the price at which the property would change hands between a willing buyer and a willing seller, nei- ther being under any compulsion to buy or to sell and both having reasonable knowledge of relevant facts." Treas.Regs. § 20.2031–1(b).

tions to account for tax initiatives pending before Congress on May 22, 1974, the taxpayer failed to show that this factor warranted a discount of 60 percent on each mineral interest held by the decedent.

(3)

The Court finds that the taxpayer is not entitled to the benefit of the ten percent cash discount on the real estate because no convincing evidence was introduced to show that all of the property would have to be sold in one cash transaction. Abelman based the cash discount on this assumption.

(4)

The government, on the other hand, established that on the date of the decedent's death the real estate was worth $705,974 and the mineral rights were worth $324,-355. The Court finds this evidence to be credible and corroborative of the Commissioner's deficiency assessment.

(5)

█ The taxpayer has the burden of establishing that the failure to file a return or pay the tax was due to reasonable cause. *Sanders v. Commissioner,* 225 F.2d 629 (10th Cir.1955), *cert. den.* 350 U.S. 967, 76 S.Ct. 435, 100 L.Ed. 839 (1956) and cases cited therein.

(6)

Reasonable cause is defined as ordinary business care and caution. Treas.Regs. § 301.6651–1(c).

(7)

█ The taxpayer failed to establish that the failure to file timely the estate tax return or pay the estate tax was due to reasonable cause. A reasonable inquiry would have led the taxpayer to discover that a return should have been filed and later supplemented as additional information became available. *See* Treas.Regs.

§ 20.6081–1(c).[4] Nor did the evidence demonstrate that the taxpayer relied exclusively on the advice of his accountant. Even if this had been the case, however, "the negligent failure of an accountant ... to prepare a taxpayer's return is not reasonable cause for a failure to timely file ...." *Laney v. Commissioner,* 674 F.2d 342 (5th Cir.1982) quoting from *Logan Lumber Co. v. C.I.R.,* 365 F.2d 846 (5th Cir.1966). Moreover, the taxpayer was granted an extension to pay the tax on the last application for an extension filed by the estate. The extension to pay was granted through November 22, 1975. This date passed without the taxpayer requesting another extension or remitting an estimated payment to the IRS. The taxpayer's conduct did not comport with ordinary business care and caution.

(8)

Even assuming that reasonable cause existed at the times that the deadlines expired because Abelman had not provided his appraisal to the executor, still more than nine months passed between the time that this information was provided to the taxpayer and the time that the taxpayer actually filed the estate return and paid the tax. This nine-month delay, despite the fact that the deadlines had long passed, is inapposite to the exercise of ordinary business care and caution. Since the maximum penalty for late filing of a return accrues after five months, no refund of the penalty is appropriate.

(9)

█ Finally, the fact that the Commissioner refunded the penalty at one point and then subsequently made a re-determination to assess the penalty does not preclude this Court from finding that the penalty was properly imposed. Courts have

---

**4.** Treas.Regs. § 20.6081–1(c), in pertinent part, provides

A return as complete *as possible* must be filed before the expiration of the extension period granted.... Except as provided in § 20.-2032A–8(d) and § 20.6166(h), the return cannot be amended after the expiration of the exten-

sion period although supplemental information may subsequently be filed that may result in a finally determined tax different from the amount shown as the tax by the executor on the return. An extension of time for filing the return does not operate to extend the time for payment of the tax.... (Emphasis supplied.)

consistently allowed the IRS to reconsider a taxpayer's liability at the administrative level. *Howard v. United States*, 497 F.2d 1270 (7th Cir.1974), and cases cited therein.

IT IS ORDERED that judgment be entered in favor of the defendant, the United States of America, and against the plaintiff, the Estate of Alice B. Smith, DISMISSING the complaint with prejudice and awarding the defendant its costs.