**Larrimore WRIGHT and Mary M. Wright, Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Appellee.**

**No. 84–1217.**

United States Court of Appeals, Fourth Circuit.

Argued Oct. 31, 1984.

Decided March 13, 1985.

**1040**

C. Richard Rayburn, Jr., Barbara J. Dean, Charlotte, N.C. (C. Richard Rayburn, Jr., P.A., Charlotte, N.C., on brief), for appellants.

Gary R. Allen, Tax Div., Dept. of Justice, Washington, D.C. (Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup, Thomas M. Preston, Tax Div., Dept. of Justice, Washington, D.C., on brief), for appellee.

Before MURNAGHAN and SPROUSE, Circuit Judges, and MICHAEL, United States District Judge for the Western District of Virginia, sitting by designation.

MICHAEL, District Judge:

The case comes before this court on an appeal from a decision of the United States Tax Court which upheld the determination of the Commissioner of the Internal Revenue of a deficiency in the appellants'-taxpayers' income taxes for the year 1976.

A brief statement of the salient facts in the case indicates that the taxpayer Wright, having been employed in an accounting firm as a partner, was solicited to join one Hamilton in Texfi Industries, Inc., of which Hamilton was president. Texfi was engaged in knitted apparel fabrics production. Because of what appears to have been a strongly held belief on the part of Hamilton that, because the textile business is an entreprenurial business, top management should have an equity investment in such business, Hamilton strongly urged taxpayer to purchase shares of the company's stock. Initially, this option to purchase granted to taxpayer was to purchase at fair-market value, as of the date of the grant of the option, 10,000 shares of common stock pursuant to the company's Employee Qualified Stock Option Plan (ESOP). Other terms of employment were negotiated relating to Hamilton's sale of his personally held stock to taxpayer, etc., which other negotiations and terms are not relevant to the issue presented in this case.

Later on, the option to purchase not having been exercised, the taxpayer and Hamilton entered into a new contract, by the terms of which Hamilton agreed to sell to taxpayer 10,000 shares of Hamilton's Texfi stock at a price of $18.00 per share. This purchase was consummated and the shares were deposited in a lending bank as collateral for the loan used to purchase the stock.

Ultimately, taxpayer resigned his employment with Texfi, and three days later requested that the bank release the 10,000 shares of Texfi stock then being held as collateral on taxpayer's indebtedness, so that the shares might be sold and the proceeds used to reduce that indebtedness. Ten days later, taxpayer sold the 10,000

shares acquired from Hamilton, and received from that sale approximately 40 percent of the price which he had paid for the 10,000 shares.

On a joint income tax return for the year of the sale, taxpayer claimed an ordinary loss deduction on the sale of the Texfi stock. On review, the Commissioner determined that the loss in this case was in fact a long term capital loss, and therefore disallowed the amount of the deduction save for the $1,000 permitted in such cases. On appeal to the Tax Court, the Judge of the Tax Court, in a carefully drafted opinion, reviewed the pertinent facts and determined that the action of the Commissioner was correct. From that decision, this appeal flowed.

In analyzing the facts in the case, the Tax Court determined that the motive of the taxpayer in acquiring the 10,000 shares of stock contained in fact a "substantial investment intent," though there may also have been business reasons associated with his employment involved in taxpayer's purchase. Significant in this respect is the contract between Hamilton and taxpayer under which taxpayer acquired the 10,000 shares. That contract provided in part as follows:

> 2. I hereby represent and warrant that I intend to purchase the Shares for investment and not with a view to, or any present intention of, selling or otherwise distributing any of the Shares....

There were a number of other provisions in that letter contract concerning what would happen to the stock if taxpayer left the employment of Texfi one year or less from the date of employment, or if the employment were to be terminated within three years for wilfull misconduct, etc. However, for the purposes of this appeal, the operative fact is the representation and warranty that taxpayer intended to "purchase the Shares for investment and not with a view to ... selling or otherwise distributing any of the Shares."

**1.** There is a reported capital gain of $3.00 shown on taxpayer's return for 1976, the year in

Section 165(a) of the Internal Revenue Code allows for deductions from income for losses sustained during the taxable year. Such deductions as to capital assets, however, are limited by the provisions of §§ 1211 and 1212 of the Code. In essence, the application of these three sections of the code to this case, if appropriate, would limit the deduction which taxpayer might take from this particular transaction to the sum of $1,000 for the year in question, since the record discloses no capital gains or losses of any moment[1] for the taxpayer for that year. Thus, under the cited sections there are no offsetting capital transactions to be taken into account. *See* 26 U.S.C. § 1211(b).

Considerable attention is paid in the briefs to the case of *W.W. Windle Co. v. Commissioner of Internal Revenue,* 65 T.C. 694 (1976), *appeal dismissed,* 550 F.2d 43 (1st Cir.), *cert. denied,* 431 U.S. 966, 97 S.Ct. 2923, 53 L.Ed.2d 1062 (1977). The appellant asserts that this is a case of first impression for any circuit under the *Windle* test. Before 1976, the test to be applied in these cases apparently was whether the asset acquisition was made with a "predominant business purpose". In 1976, in the *Windle* case, the United States Tax Court adopted a rule asserted to be more stringent, namely, whether the asset acquisition, though made for business purposes, also was made with a "substantial investment intent". The United States Tax Court has applied this test in cases involving the issue before the court in this case.

■ The asserted greater stringency in the *Windle* test is shown in the *Windle* opinion language that

> Where a substantial investment motive exists in a predominantly business-motivated acquisition of corporate stock, such stock is a capital asset.

65 T.C. at 712. With this test, it becomes apparent that each of these cases must turn on its own facts, in divining if there is

question.

a "substantial investment motive" in an acquisition which may be found to be "a predominantly business-motivated acquisition". Thus, the precedential values of other cases dealing with this issue will only give general guidance in resolving the issue, the factual inquiries being of comparatively much greater weight in supplying the resolution of the issue.

Whether this case provides a first impression application of the *Windle* test among the Circuits is not of much importance in deciding this case. Certainly, the *Windle* test has been with us since 1976, and was considered, at least, in the *Windle* appeal to the First Circuit and in the denial of *certiorari* to the Supreme Court, though the opinion in the First Circuit reflects its decision not to reach and decide the particular issue here.

The complaint in appellants' brief that the *Windle* rule would require a "totally subjective judgment by the court whether there was a 'substantial' investment intent coexisting with a valid business motive" is simply not an accurate assessment of the effect of the *Windle* test. Intent must be discerned in many areas of the law, and it is done regularly, but rarely is there a case where such discernment is "totally subjective", and this case certainly provides ample non-subjective guidance to discern that intent, in the terms of the contract and in the admission of the taxpayer concerning treatment of the gain had the stock been sold at a profit, *infra*.

In short, an entity peculiarly suited to the consideration of such questions, the United States Tax Court, has developed the *Windle* test, concededly a change from the test used before 1976, and has supported that test with a reasoned, logical basis for its use. Seeing in its application no more than the usual problems in determining intent, this court will follow the rule set out in *Windle*.

Under the provisions of § 1221 of the Code, it is generally accepted that shares of stock are in fact capital assets, and must be treated as capital assets under the Code. There are some exceptions to this, the par-

ticular case on which taxpayer seems to rely most heavily being *Corn Products Refining Co. v. Commissioner of Internal Revenue*, 350 U.S. 46, 76 S.Ct. 20, 100 L.Ed. 29 (1955).

In *Corn Products*, the appellant traded heavily in corn futures, to assure to the extent possible an adequate supply of corn at a price stabilized to the degree possible by trading in futures, so as to continue smoothly its business of manufacturing corn products. Ordinarily, such corn futures would be considered to be capital assets, but the Supreme Court in that case held that the trading in these corn futures was so closely and integrally related to the business of taxpayer in corn products manufacturing that the appellant in that case was justified in treating the gains and losses on the trading in corn futures as usual profits and losses, rather than treating such items as capital gains and losses.

■ The finding of the Tax Court below is that the purchase by taxpayer Wright of the 10,000 shares of Texfi stock was not so integral a part of his employment as to fall within the exception of *Corn Products*. While there was substantial evidence to the effect that Hamilton, as employer, expected his senior employees to hold an equity position in the company, there is no evidence that the purchase of the stock was a stated condition either of obtaining or of maintaining taxpayer's employment with Texfi.

In a candid and revealing admission by taxpayer in the proceedings below, taxpayer asserted that, had he had a gain on the sale of the Texfi stock, he would have expected *it to be treated as a capital gain*, with the consequent advantages to him from such treatment.

This court reviews the action of the United States Tax Court under the "clearly erroneous" standard. *Commissioner of Internal Revenue v. Duberstein*, 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960). While taxpayer maintained that he bought the stock only because of the "requirement" for an equity position in the compa-

ny imposed by his employer's president, Hamilton, there nonetheless is more than adequate evidence in the record to indicate that a substantial motive of the taxpayer in buying the stock was that of investment. The provisions of the contract quoted *supra*, the admission of the taxpayer that he would have treated any profit from the sale as a long term capital gain, and the fact that there was no provision in any of the contractual relationships worked out between the parties requiring the purchase of the stock, all conjoin to indicate that, while there may have been a desire on the part of taxpaye: to meet the expectations of Hamilton in acquiring the equity position, there neverthe'ess was a substantial investment motive on the part of taxpayer in making the purchase of the stock.

Since the facts of the case here do not justify the imposition of the doctrine of *Corn Products*, and because the finding of the Tax Court below as to substantial investment motive is not clearly erroneous, the opinion and decision of the Tax Court must be

AFFIRMED.