FRANK CLAYTON LESTER AND BARBARA LANE LESTER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Lester v. Commissioner
Docket No. 15907-93
United States Tax Court
T.C. Memo 1995-317; 1995 Tax Ct. Memo LEXIS 314; 70 T.C.M. (CCH) 77; July 18, 1995, Filed *314 Decision will be entered under Rule 155. Frank Clayton Lester, pro se. For respondent: Bruce K. Meneely. GERBER
GERBER
MEMORANDUM FINDINGS OF FACT AND OPINION GERBER, Judge: Respondent determined a deficiency in petitioners' 1989 Federal income tax of $ 8,811. For 1989, respondent also determined additions to tax of $ 1,402 and $ 1,762 under sections 6651(a)(1)[1] and 6662, respectively. After concessions by respondent, the following issues remain for our consideration: (1) Whether losses from trading stocks, stock options, and stock index options are ordinary or capital, and (2) whether petitioners are liable for an addition to tax under section 6662. FINDINGS OF FACT Petitioners, who are married and filed an untimely joint return for 1989, resided in Oklahoma City, Oklahoma, at the time their petition *315 in this case was filed. Frank Lester (petitioner) became a stockbroker in 1985, and during 1989 he was employed as a stockbroker by Stifel, Nicolaus & Co., and Park Avenue Securities, Inc. He received commissions for transactions made on behalf of clients and for transactions on his own account. About 35 to 40 percent of his trades were on his own account. He bought and sold stocks, stock options, and stock index options through national exchanges. Petitioner began trading options during 1985 and incurred annual losses in all of his options trading. Of all transactions engaged in by petitioner for his own account, 95 percent consisted of option trades. In 1986, however, his commissions from all trading exceeded his option transactions losses. Petitioner did not hold for sale or sell to customers any of the stocks or options he had purchased for his own account. For 1989, petitioners reported $ 62,960.14 of compensation, $ 25,143 of which was petitioner's military retirement pay and $ 4,094.56 of which was Mrs. Lester's wages. The remainder ($ 33,722.58) appears to be compensation attributable to petitioner's commissions from trading transactions. On their Schedule C, Profit or Loss *316 From Business, petitioners reported $ 102,919.53 of proceeds, $ 139,060.87 in costs, and a net loss of $ 36,141.34 from financial trading for 1989. In addition, petitioners claimed $ 2,399.04 of expenses attributable to the trading activity, for a total loss of $ 38,540.38, which was subtracted from petitioners' total compensation and other income. Respondent concedes that the $ 2,399.04 claimed is deductible from adjusted gross income, but argues that petitioners' loss of $ 36,141.34 is a capital loss, of which a maximum of $ 3,000 is allowable as a deduction from petitioners' ordinary income for the year. OPINION The primary question for our consideration is the characterization of gains or losses from transactions in stocks and options by a trader in stocks and options. More specifically, we must decide whether the stocks and options were capital assets in petitioner's hands under section 1221. Section 1221 defines a capital asset as "property held by the taxpayer (whether or not connected with his trade or business), but does not include" (1) stock in trade of the taxpayer; (2) depreciable property used in a trade or business; (3) copyright property; (4) accounts or notes receivable *317 acquired in the ordinary course of business; and (5) publications of the U.S. Government under certain conditions. If petitioners' loss is capital, it is limited to the amount of the loss or $ 3,000, whichever is smaller. Sec. 1211. Respondent contends on brief that For tax purposes, persons who purchase and sell securities fall into one of three distinct categories: dealers, traders or investors. Dealers hold securities as stock in trade or inventory for sale to customers. Securities in the hands of a dealer are not capital assets under section 1221 and the activity will generate ordinary income and losses. A trader, on the other hand, does not have customers to whom securities are sold. Securities held by a trader are capital assets under section 1221, subject to capital gain and loss treatment. * * *
In addition, respondent argues that, with respect to the index options (nonequity options), section 1256(f)(3) mandates that gains and losses from trading same are from capital assets, irrespective of the purpose of acquiring or disposing of the options. Finally, the parties agree that Mr. Lester purchased the stocks and options in order to meet the minimum sales requirements *318 of his employer. In other words, petitioner's sales to third parties were not sufficient for him to continue as an employee of the stock brokerage firm. Petitioners argue that, as a trader of stocks and options, petitioner should be afforded ordinary gain or loss treatment under the concepts of Corn Products Refining Co. v. Commissioner, 350 U.S. 46 (1955). Petitioners argue that, under the Corn Products doctrine, property may be excluded from the definition of capital asset even though it does not come within any of the enumerated exceptions in section 1221. Petitioners also argue that a particular asset may be ordinary in the hands of one person and capital in the hands of another. Petitioners contend that petitioner's business or status as an employee selling securities and related financial products puts the stocks and options he purchased in a different category from capital or investment assets. Respondent contends that the exact question posed by petitioners was answered by the Supreme Court in Arkansas Best Corp. v. Commissioner, 485 U.S. 212 (1988). Prior to the decision in Arkansas Best, a seminal case *319 involving the definition of capital asset was Corn Products Refining Co. v. Commissioner, supra. The taxpayer in that case was seeking capital gains treatment for gains derived from dealings in corn futures. The Supreme Court, however, held that the transactions were hedging transactions designed to protect against price fluctuations in the principal raw material of the taxpayer's manufacturing operation, and, consequently, the corn futures were excluded from the definition of capital asset in section 117, I.R.C. 1939 (predecessor of section 1221). In reaching that conclusion, the Supreme Court indicated that the corn futures contracts assured a ready supply for the taxpayer's manufacturing requirements, thus stabilizing the cost of its inventory. The Corn Products doctrine spawned a series of cases in which courts permitted ordinary loss treatment to taxpayers who could show that an asset was acquired for a business purpose rather than for an investment purpose. See, e.g., W.W. Windle Co. v. Commissioner, 65 T.C. 694 (1976); Wright v. Commissioner, 756 F.2d 1039 (4th Cir. 1985), affg. *320 T.C. Memo. 1983-707; Campbell Taggart, Inc. v. United States, 744 F.2d 442 (5th Cir. 1984); Dearborn Co. v. United States, 195 Ct. Cl. 219, 444 F.2d 1145 (1971). The central holding of Arkansas Best Corp. v. Commissioner, supra at 223, is "that a taxpayer's motivation in purchasing an asset is irrelevant to the question whether the asset is 'property held by a taxpayer (whether or not connected with his business)' and is thus within § 1221's general definition of 'capital asset.'" The Arkansas Best holding called into question the continuing vitality of many of the business purpose cases decided in reliance on Corn Products Refining Co. v. Commissioner, supra.The Supreme Court in Arkansas Best did not overrule the holding in Corn Products. Instead, it reconciled the Corn Products rationale by explaining that the hedging transactions as described in Corn Products fit within the inventory exception to section 1221. See, e.g., FNMA v. Commissioner, 100 T.C. 541, 572-579 (1993). *321 Whether the purposes for purchasing or selling were purely for investment, or to reach a certain level of sales to maintain petitioner's employment, the stock and options were capital assets in petitioner's hands. The Supreme Court's analysis of the Corn Products doctrine in Arkansas Best resolves the question raised in this case. Petitioner did not purchase the stock or options as inventory for sale to his clients. Petitioners do not contend that the purchase or sale was ever related to inventory, such as the hedging transactions in Corn Products. Although petitioner may have purchased or sold the stocks and options to maintain his employment status, the stock or options were held by him as capital assets in an investment capacity. Accordingly, we conclude that petitioner's stock and option transactions resulted in capital losses. We next consider whether petitioners are liable for additions to tax under section 6662(a). That section provides a 20-percent addition to tax on any portion of an underpayment to which section 6662 applies. In particular, respondent determined that petitioners were liable for an addition to tax due to a substantial understatement of income *322 tax. Sec. 6662(b)(2). A substantial understatement is one that exceeds the greater of 10 percent of the tax required to be shown or $ 5,000. Sec. 6662(d)(1)(A). Any understatement is reduced by an item which is adequately disclosed or for which there is or was substantial authority for its tax treatment. Sec. 6662(d)(2). The Supreme Court's Arkansas Best opinion was issued in 1988. Accordingly, we cannot find that petitioners had substantial authority for their position several years later when they untimely filed their 1989 income tax return. Therefore, we must consider whether petitioners' understatement may be reduced because the trading loss was a "disclosed item". Section 6662(d)(2)(B)(ii) defines a disclosed item as one where "the relevant facts affecting the item's tax treatment are adequately disclosed in the return or in a statement attached to the return". For the period under consideration, respondent provided guidance to taxpayers by means of Notice 90-20, 1990-1 C.B. 328, and Rev. Proc. 90-16, 1990-1 C.B. 477. [2] Under those procedures, taxpayers were to look to section 1.6661-4, Income Tax Regs., *323 for guidance as to adequate disclosure for purpose of section 6662(d)(2)(B)(ii). Section 1.6661-4, Income Tax Regs., provides that disclosure is adequate with respect to the tax treatment of an item if it is made on the return or in a statement attached to the return. The adequate disclosure requirements can "be satisfied by providing on the return sufficient information to enable respondent to identify the potential controversy involved." Schirmer v. Commissioner, 89 T.C. 277, 285-286 (1987). In this case, petitioners' return reflected that petitioner's profession was "stockbroker", and a Form W-2 (Wage and Tax Statement) was attached reflecting at least $ 26,099.01 of compensation paid to him in 1989. On their Schedule C, petitioners listed Mr. Lester's principal *324 business or profession as "Financial Trading". The Schedule C also reflected $ 102,919.53 in receipts and $ 139,060.87 of costs, for a loss of $ 36,141.34. After adding $ 2,399.04 of expenses, petitioners claimed an ordinary loss from "Financial Trading" of $ 38,540.38, which was carried to page 1 of their 1989 income tax return, and reduced their gross income in arriving at their adjusted gross income. Petitioners provided some information that could possibly suggest a controversy or conflict between reported items. Those clues, however, were in different parts of the return. Petitioners' use of the term "Financial Trading" in the title portion of their Schedule C was not sufficient to frame the controversy or to adequately disclose their position to respondent. We hold that petitioners did not make adequate disclosure within the meaning of section 6662 and are liable for the addition to tax under that section. To account for concessions by respondent, and to reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the taxable year under consideration, and all Rule references are to this Court's Rules of Practice and Procedure.↩
2. Sec. 1.6662-2(d), Income Tax Regs.↩, is not applicable because it was issued to apply prospectively with respect to income tax returns due after Dec. 31, 1991. The return under consideration was due on or before Apr. 15, 1990.