T.C. Memo. 1996-546


UNITED STATES TAX COURT


STANLEY AND JEAN COHEN, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 3956-93.                    Filed December 18, 1996.


<u>Bernard S. Mark</u> and <u>Richard S. Kestenbaum</u>, for petitioners.

<u>Halvor N. Adams III</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


BEGHE, <u>Judge</u>:  Respondent determined deficiencies in, and

additions to, petitioners' Federal income taxes as follows:[1]

---

[1]Unless otherwise indicated, section references are to the
Internal Revenue Code in effect for the years at issue, and all
Rule references are to the Tax Court Rules of Practice and
Procedure.

| | | Additions to Tax | | | | | |
|------|------------|----------------|----------------|-------------------|----------------|-------------------|--------|
| Year | Deficiency | Sec. 6651(a)(1) | Sec. 6653(a)(1) | Sec. 6653(a)(1)(A) | Sec. 6653(a)(2) | Sec. 6653(a)(1)(B) | Sec. 6661 |
| 1985 | $96,919 | $19,480 | $4,846 | -- | [1] | -- | $24,230 |
| 1986 | 59,044 | 14,611 | -- | $2,952 | -- | [2] | 14,761 |
| 1987 | 116,370 | 29,093 | -- | 5,819 | -- | [3] | 28,414 |
| 1988 | 25,576 | 2,558 | 1,279 | -- | -- | -- | 6,394 |

[1] Fifty percent of the interest due on $96,919
[2] Fifty percent of the interest due on $59,044.
[3] Fifty percent of the interest due on $113,657.

Pursuant to six stipulations of settled issues, the parties resolved, by mutual concessions, all substantive issues in this case and agreed that petitioners are liable for deficiencies in the amounts of $96,919 for 1985, zero for 1986, $92,439 for 1987, and $12,544 for 1988. The only issues that remain for decision concern petitioners' liability for additions to tax, based on the agreed underpayments for 1985, 1987, and 1988, for failure to file timely returns under section 6651(a)(1), for negligence or (intentional) disregard of rules or regulations under section 6653(a), and for substantial understatement of tax under section 6661. We hold petitioners liable for each of the additions to tax.

                              FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated by this reference. At the time the petition was filed, petitioners resided in Great Neck Estates, New York. All references to petitioner are to petitioner Stanley Cohen.

For several years petitioner was employed as manager of the Wall Street office of Loeb Rhodes & Co., a securities brokerage firm. Subsequently, he was affiliated with Tyz-All Plastics, Inc., as an employee, officer, director, and shareholder. His affiliation with this corporation ended in 1986. Prior to and during the years at issue, petitioner traded securities for his own account. The parties have stipulated that he did not engage in these securities transactions as a dealer.[2]

During the years at issue petitioner held an interest in several partnerships and S corporations. In 1986 he and two other individuals incorporated KRS Restaurant Corp. (KRS) for the purpose of operating a restaurant. Later that year petitioner and his two associates formed the Carlisle Inn Joint Venture (CIJV) and Harrisburg Inn Joint Venture (HIJV) to operate two motels. Acquisition of the motel and restaurant businesses was financed in part by loans that petitioner and his associates guaranteed. The Forms 1065 filed by CIJV and HIJV reflect that a 50-percent interest in each joint venture was owned by an S corporation called KBS Motel Corp. (KBS). The Forms 1120S filed

---

[2]The record contains additional facts concerning petitioner's background and trading activity that may be relevant to the reasonableness of petitioner's reliance on his accountant's substantive tax advice for purposes of sec. 6653(a) and to the existence of reasonable cause for a waiver under sec. 6661. In view of our disposition of both of these issues, however, further details would be superfluous, and we have therefore omitted them.

by KBS show petitioner and his two associates as equal one-third shareholders.[3] Petitioner actively participated in the management of each of the entities and signed their tax returns.

Petitioners' Federal income tax returns for the years at issue were prepared by Edward Leuschner (Leuschner). Leuschner has been a certified public accountant since 1964. Tax return preparation constitutes half of his practice. Leuschner prepared petitioners' returns on the basis of information provided by petitioner, including Schedules K-1 and worksheets prepared by petitioner showing the results of his securities transactions during the year.

Petitioner had net losses from his investments in S corporations and partnerships for each of the years at issue. The largest losses for 1987 and 1988 arose from the motel and restaurant businesses reported on the Schedules K-1 issued by KBS and KRS. Leuschner advised petitioner that he had sufficient basis and amount at risk to deduct fully his distributive share of loss from each of the entities for each year. With respect to the losses reported by KBS and KRS in particular, Leuschner

_____

[3]Whether the tax returns of CIJV, HIJV, and KBS accurately reflect the actual ownership relationships among these entities and petitioner is disputed by the parties. Petitioners contend that the tax returns are inaccurate. Respondent takes the position that this question is subject to resolution in a TEFRA partnership-level proceeding and thus not properly before this Court. There is no dispute, however, that the Schedules K-1 used to prepare petitioners' returns were based on the ownership structures reflected on the entities' returns.

explained to petitioner that the amounts of the loan guarantees he had furnished in connection with the motel and restaurant acquisitions were properly credited to his basis and amount at risk and would absorb the deductions.

For each of the years at issue, petitioner also sustained net losses from his securities trading. Leuschner advised petitioner that his securities trading was substantial enough to constitute a trade or business entitling him to deduct his trading losses in full on Schedule C. On the basis of similar advice that he had received from other accountants, in prior years petitioner had reported his trading losses as ordinary losses on Schedule C rather than capital losses on Schedule D depending on the level of his trading activity during the year.

Preparation of petitioners' return for 1985 was delayed by an Internal Revenue Service audit of one of the entities in which petitioner held an interest, a limited partnership called Barrister Equipment Associates (or Trust). It was Leuschner's practice to advise his clients not to file a return until it could be filed on the basis of complete and accurate information. In his opinion, the alternative strategy of filing a timely but incorrect return and subsequently amending it was unwise, because it tended to expose the client to a greater risk of audit. Moreover, he determined from the available information that petitioners would have no tax liability for 1985 owing to sizable

current losses and loss carryforwards.  He advised petitioner that since no tax would be due, there would be no financial disadvantage to filing a late return.  Petitioner knew that he had a duty to file timely returns, but adopted the course of action that Leuschner recommended.  Petitioners requested and received extensions of the due date for their 1985 return until October 15, 1986.  They did not file their 1985 return until January 11, 1988.

The returns for 1987 and 1988 were untimely filed for similar reasons.  Not all the information relevant to petitioners' tax liabilities for these years had been collected before the prescribed dates for filing.  Leuschner informed petitioner that in view of the "overwhelming" losses passed through to him from the motel and restaurant businesses, he would certainly have no tax liability for these years, and hence no reason to be concerned about meeting the filing deadlines.  Once again petitioner was persuaded by the logic of his accountant's advice.  Petitioners sought and received extensions of the due date for filing their return for 1987 until October 15, 1988.  They filed the return on December 5, 1989.  Petitioners sought and received extensions of the due date for filing their 1988 return until October 15, 1989.  They filed the return on December 4, 1989.

The results of petitioner's securities trading for each of the years at issue were reported on Schedule C using a method that tracked changes in an aggregate trading account. The ending balance of this account was reported as "gross receipts" for the taxable year, while the sum of the initial balance plus losses incurred during the taxable year was reported as "cost of goods sold". The Schedule C for each year showed a net loss equal to the excess of the amount of cost of goods sold and certain business expenses over gross receipts (gross receipts were not reported for 1985). No information provided on the returns identified what "gross receipts" and "cost of goods sold" represented. The reported amounts, taken from the worksheets that Leuschner had received from petitioner, overstated the actual losses by $184,598 for 1985, $76,910 for 1987, and $46,281 for 1988. The Forms 1040 for each year described petitioner's occupation as "trader" and the Schedules C for 1985 and 1988 further identified the business activity to which the cost items were attributable using simply the word "trading". The type of asset traded was not disclosed. In addition, for 1985 and 1987 petitioners reported on Schedule C certain expenses that should have been reported on Schedule A, and they claimed losses from partnerships and S corporations in amounts that exceeded petitioner's basis and amount at risk by $5,444 for 1985, $154,468 for 1987, and $379,613 for 1988.

OPINION

Petitioners bear the burden of proving that they are not liable for additions to tax under sections 6651(a)(1), 6653(a), and 6661.  Rule 142(a).

1.  Section 6651(a)(1)

Section 6651(a)(1) imposes an addition to tax for failure to file an income tax return by the prescribed due date (including any extensions).  The amount of the addition is 5 percent of the amount of tax required to be shown on the return for each month that the delinquency continues, up to a maximum of 25 percent. The addition to tax does not apply when the failure to file was due to reasonable cause and not due to willful neglect.  Sec. 6651(a)(1).  To establish reasonable cause a taxpayer must demonstrate that he exercised ordinary business care and prudence but was nevertheless unable to file within the prescribed time period.  Sec. 301.6651-1(c), Proced. & Admin. Regs.

Petitioners contend that they exercised ordinary business care and prudence in relying on the advice of a certified public accountant that it was more appropriate to file a late return than to file a timely return on the basis of incomplete and inaccurate information.  They argue that such reliance constitutes reasonable cause, citing United States v. Boyle, 469 U.S. 241, 251 (1985).  We disagree.

In <u>United States v. Boyle</u>, <u>supra</u>, the Supreme Court suggested that a taxpayer's reliance on professional advice that there is no obligation to file would generally establish reasonable cause for purposes of section 6651. <u>Id.</u> at 250-251. On the other hand, the Court affirmed that the orderly operation of our system of self-assessment depends on strict compliance with known filing obligations. <u>Id.</u> at 249. Leuschner did not advise petitioner that he need not file a return. Petitioner is a sophisticated businessman. He exercises responsibility for the tax compliance of partnerships and S corporations whose business he manages. He was aware of his obligation to file returns and of the applicable deadlines. The advice he received from Leuschner was that failure to comply with filing deadlines would have no adverse consequences because he would have no tax to pay. Leuschner also may have explained to petitioner that his recommendation was based in part on the concern that filing an amended return would prompt an audit of the return. The argument that reliance on such advice constitutes reasonable cause for delinquency has been rejected repeatedly by this Court and others. <u>Jackson v. Commissioner</u>, 864 F.2d 1521, 1527-1528 (10th Cir. 1989), affg. 86 T.C. 492, 538-539 (1986); <u>Becker v. Commissioner</u>, T.C. Memo. 1990-120; <u>Estate of Smith v. United States</u>, 589 F. Supp. 836, 840 (E.D. La. 1984); cf. <u>Lilley v. Commissioner</u>, T.C. Memo. 1989-602, affd. without published

opinion 925 F.2d 417 (3d Cir. 1991).  The addition to tax under

section 6651 is accordingly sustained.

2.  Section 6653(a)

Section 6653(a) provides for an addition to tax if any part

of an underpayment is due to negligence or (intentional)

disregard of rules or regulations.  For taxable years 1985 and

1987 the amount of the addition to tax is 5 percent of the entire

underpayment plus 50 percent of the interest payable with respect

to the portion of the underpayment attributable to negligence.

Sec. 6653(a)(1) and (2) (taxable year 1985); sec. 6653(a)(1)(A)

and (B) (taxable year 1987).  For the 1988 taxable year the

addition is equal to 5 percent of the underpayment.  Sec.

6653(a)(1).  For purposes of section 6653(a), "underpayment" has

the same meaning as "deficiency", as defined in section 6211(a),

except that the amount shown on the return is treated as zero if

the return was filed after the prescribed deadline, including any

extension.  Sec. 6653(c)(1).  "Negligence" includes any failure

to make a reasonable attempt to comply with provisions of the

Code.  Sec. 6653(a)(3); cf. Neely v. Commissioner, 85 T.C. 934,

947 (1985).

Failure to comply with filing deadlines without reasonable

cause within the meaning of section 6651(a)(1) constitutes

negligence.  Sullivan v. Commissioner, 985 F.2d 704, 706 (2d Cir.

1993), affg. in part and revg. on another issue T.C. Memo. 1991-

492; Emmons v. Commissioner, 92 T.C. 342, 349 (1989), affd. on other grounds 898 F.2d 50 (5th Cir. 1990); Eyefull Inc. v. Commissioner, T.C. Memo. 1996-238; Ellwest Stereo Theatres v. Commissioner, T.C. Memo. 1995-610. Petitioners' failure to comply with filing deadlines created underpayments for each of the years at issue equal to the amount of tax due. Since they were unable to show reasonable cause for the delinquencies, it follows that the underpayment for each year was attributable to negligence.[4]

3.   Section 6661

Section 6661 imposes an addition to tax equal to 25 percent of the amount of any underpayment attributable to a substantial understatement of tax. Sec. 6661(a). An understatement is substantial if it exceeds the greater of 10 percent of the tax required to be shown on the return or $5,000. Sec. 6661(b)(1)(A). The understatement is reduced by any portion attributable to: (1) The tax treatment of an item for which the taxpayer had substantial authority, or (2) an item with respect to which the relevant facts affecting the item's tax treatment are adequately disclosed in the return or in a statement attached to the return. Sec. 6661(b)(2)(B). Respondent is authorized to

---

[4]Our disposition of the negligence issue obviates the need to consider petitioners' contention that they were not negligent with respect to the substantive errors on their tax returns because they relied reasonably and in good faith on professional advice.

waive the addition to tax, in whole or in part, upon a showing that the taxpayer had reasonable cause for the corresponding portion of the understatement and acted in good faith.  Sec. 6661(c).  It is undisputed that petitioners substantially understated their tax liability for 1985, 1987, and 1988.

Petitioners advance two arguments to contest their liability under section 6661.  First, they argue that the substantial understatements should be reduced to the extent that they are attributable to the securities trading losses deducted on Schedule C, because petitioners disclosed sufficient relevant facts to enable respondent to identify the potential controversy. We disagree.  Petitioners did not follow the procedures for making adequate disclosure on Form 8275 or on a statement attached to the return as provided for in the regulations.  See sec. 1.6661-4(b), Income Tax Regs.  The returns themselves contained no reference to section 6661 or other acknowledgment that petitioners were taking a potentially controversial position.  They did not explicitly identify petitioners' position with respect to the losses.  Nor could respondent reasonably be expected to infer that the characterization of losses was at issue, where the losses were identified only as "cost of goods sold".  The Forms 1040 reflected that petitioner's occupation was "trader" and the Schedules C for 1985 and 1988 reflected that his principal business was "trading".  When used properly in their

technical legal sense, these terms denote activities inconsistent with the use of Schedule C for reporting of losses, see, e.g., Kemon v. Commissioner, 16 T.C. 1026, 1032-1033 (1951); Kelly v. Commissioner, T.C. Memo. 1996-529, and might therefore suggest a potential controversy.  But inasmuch as respondent had no way of ascertaining whether these terms were being used as legal terms of art or in some nontechnical sense, these terms could not serve as a substitute for disclosure of the fact that petitioner was reporting losses from the sale of property that he had not held as inventory or primarily for sale to customers.  Cf. Lester v. Commissioner, T.C. Memo. 1995-317.  Petitioners did not adequately disclose any items contributing to the substantial understatements for the years at issue.

Petitioners' second argument is that respondent should have waived the additions to tax for substantial understatement because the errors on their returns (or most of them) were the result of reasonable and good faith reliance upon the mistaken judgments of their accountant.  See sec. 1.6661-6(b), Income Tax Regs.  Respondent's failure to waive the addition to tax under section 6661 is reviewable by this Court for abuse of discretion. Mailman v. Commissioner, 91 T.C. 1079, 1083-1084 (1988).  In order to establish abuse of discretion, the taxpayer must demonstrate that he specifically requested a waiver or otherwise presented his claim to respondent at some time during the

administrative stage of the proceedings so as to afford her the opportunity to exercise her discretion. McCoy Enterprises v. Commissioner, 58 F.3d 557, 563 (10th Cir. 1995), affg. T.C. Memo. 1992-693; Estate of Reinke v. Commissioner, 46 F.3d 760, 765 (8th Cir. 1995), affg. T.C. Memo. 1993-197; Sisson v. Commissioner, T.C. Memo. 1994-545; Myers v. Commissioner, T.C. Memo. 1994-529; Klieger v. Commissioner, T.C. Memo. 1992-734.

Petitioners concede that they did not seek a waiver prior to trial, but contend that there is case authority for the proposition that respondent should have granted a waiver sua sponte. On brief they cite Fisher v. Commissioner, 45 F.3d 396 (10th Cir. 1995), revg. and remanding T.C. Memo. 1992-740; Vorsheck v. Commissioner, 933 F.2d 757 (9th Cir. 1991), affg. in part and revg. in part an Oral Opinion of this Court; and Daoust v. Commissioner, T.C. Memo. 1994-203. Petitioners' reliance on these cases is misplaced. In the Fisher case, the Court of Appeals found that the Commissioner abused her discretion by failing to respond to the taxpayer's request for a waiver, not by refusing to grant a waiver sua sponte. In neither of the other decisions cited by petitioners is there any indication of whether an administrative remedy was in fact sought or any discussion of the need to follow such a procedure as a matter of law. Petitioners have not proven their entitlement to a waiver. The addition to tax is accordingly sustained.

To reflect the foregoing,

Decision will be entered

under Rule 155.
